Appeals Court, Jonathan Libby, appearing on behalf of Appellant Joseph Stoterau. Your Honors, this case raises several sentencing issues. Before I get to the various supervised release condition challenges, I'd like to first discuss the Rule 32 issue and then the sexual contact enhancements. Under Rule 32 I3B, the Court is required to resolve all factual disputes. In this case, the defendant is expressly objected to consideration of paragraphs 8 through 13 of the present report, arguing they were unreliable because they are the products of police reports, which are unreliable. Wasn't it an evidentiary issue? It was like it was an LSI hearsay exception. It seemed – I wasn't clear why it was a factual dispute when it seemed to be raising an evidentiary issue. Well, essentially, the defendant was not agreeing that any of the facts contained in those paragraphs, which come from police reports, are accurate. He's – he was neither admitting or denying the accuracy of them. He's simply saying they're not reliable and so we can't rely upon them. But wasn't the ground that was given related to the hearsay, that they were impermissible hearsay? Or was something – was there a challenge to the facts as being disputed? No. I believe it was just a general challenge based on the unreliability of the police reports. But I can't find that right now. In any event, within those paragraphs, there's actually a dispute – there's a disputed issue. The police reports themselves indicate that John Doe, the victim, indicated that he had engaged in sexual relations with Mr. Stottero. Not that that was in paragraph 10. Paragraph 12 indicates that Mr. Stottero denies having ever engaged in sexual relations. That factual dispute, which, again, was contained within the paragraphs that we objected to, was never resolved by the district court. And what's interesting here is the government is actually relying on the fact they believe that they had engaged in sexual relations as a basis for the sexual contact enhancement. So we would submit, since that fact had not been resolved, the sentence has to go back. Under this Court's precedence, Fernanda Zangula, strict compliance with Rule 32 is required. I thought – I may have been mistaken. You're more familiar with this record than I am. But I thought that the government was taking position that the sexual conduct was partially with the defendant, but also when the defendant was committing the pimping and brought people in, that there was sexual contact there, too. That's correct. The government's making – with respect to the contact enhancement, they're making multiple alternative arguments with respect to why the contact enhancement qualifies under – as relevant to sexual conduct. And one of their alternative arguments is that the victim and Mr. Stiderow had themselves engaged in sexual relations. So – and, again, that fact is still in dispute. So the government's relying on that as a possible basis for the enhancement, and since the fact was never resolved, it's not something the Court should have been able to consider. Is there any – you indicated that there may be a reason why that the allegation that your client has sexual relations with John Doe would be inappropriate. Is there anything in the record to show that the same thing is true for the customers that were pimped over to John Doe? Well, we have many issues with respect to the contact enhancement. Why don't I switch over to the contact enhancement? The government argues there's multiple reasons for why relevant conduct applies. We don't believe that any of the definitions of relevant conduct under the guidelines can apply to this particular enhancement provision. So your position is that the customer is coming in and having sex with John Doe is not included? It's also not included. That's correct. It's our position that the enhancement under 2G 2.1b2a, which is that if the offense – if the offense involved the commission of a sexual act or sexual contact increased by two levels, that's the guideline provision. By its literal terms, the enhancement applies only if the sexual contact appeared or occurred as part of the offense, the offense being the production of child pornography. That's what the offense is here. So we say offense means the offense of conviction and all relevant conduct under 1B1.3. I'm looking at application note 1H to 1B1.1. And so it's not just the offense of conviction. It's all relevant conduct. And then the relevant conduct, when you look at 1B1.3, include harm that resulted from the acts and omissions that were committed, aided, abetted, counseled, et cetera, by the defendant. And so it was hard for me to understand why the actions that were taken by your client, including putting him in contact with the website customers and uploading his photos to the website wouldn't fall within – weren't a harm to the child and wouldn't be related conduct. Can you explain why that doesn't work? With respect, Your Honor, you didn't read all of 1B1.381. It applies to all acts and omissions committed or willfully caused by the defendant that occurred during the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense. So it has to be one of those three. All right. With respect to the sex that occurred with the prostitution that occurred, that occurred after the production of the child pornography, which is the offense. So it did not occur during the offense of conviction. It also was not in preparation for that offense because it did not occur prior to the production of the child pornography. And nor is it in the course of attempting to avoid detection because, in fact, the images were uploaded onto the Internet specifically not to avoid detection, that people – they, in fact, wanted to bring attention to the images. So it doesn't meet any of the standards for relevant conduct under 1B1.381. So are you saying that the uploading of the boy's photos to the website wasn't a harm to the boy? I'm not suggesting it wasn't a harm to the boy. We're simply saying it doesn't qualify as relevant conduct under that guideline provision. Now, the government then also says, as an alternative argument, this was not presented below, they argue, well, then you can look at a different provision which says all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction, that can be grouped under 3D1.2d qualifies here for relevant conduct purposes, except 3D1.2d expressly exempts this statute as – for grouping purposes. It says grouping doesn't apply to this statute. So that argument fails. Then they argue, all right, well, they quote from a case which discusses in general how the guideline seeks to punish the defendant for all harm that resulted from the acts and omissions for which she's responsible. Well, that's all fine and good, and the Court can simply decide within the guideline ranges how that harm applies in determining the sentence, but that doesn't mean we can apply an enhancement to the defendant where that enhancement doesn't apply and where submitting it doesn't apply here. And then that leaves the government's final argument, which is that, well, the sex act between the victim and the defendant qualifies. Well, here's the problem with that. Again, it's in dispute, so we don't know if it in fact occurred. There's no evidence in the record as to when it occurred or if it occurred, so they simply did not prove that. So it doesn't meet any of the standards for relevant conduct. So then we go back to the literal terms of the enhancement, and interestingly, if you go back to this is contained in Amendment 664. So when one goes and looks in Appendix C of the guidelines, which details the amendments, this was amended as part of the Protect Act. The Senate's commission gets its reasons for the amendment. And the reasons for the amendment are the commission concluded that this type of conduct is more serious than the production of a picture without a sex act. So they're saying if the picture that you're producing includes a sex act, that's worth a two-level enhancement, and that's why the commission put this in here. Again, no evidence that the production of pornography, the offensive conviction, involved a sex act. Now, it may have involved the lascivious exhibition of the genitalia or pubic area, but it did not involve a sex act, and therefore the two-level enhancement should not apply. Counsel, I have a question on that, and maybe I'm missing something here. But the offense conduct includes under that 1B1.3A1A, all acts and omissions committed, abetted, et cetera, et cetera. And then it goes on and says, procured or caused by the defendant. So if the defendant puts child porn on the website and that leads customers to call the victim for sex for money, why isn't why aren't those acts, the sex acts, acts that have been procured by the defendant? Well, because they were not procured as part of the production of the child pornography. But they resulted from it. I guess I'm having a little trouble following the argument, too. I mean, that's clearly a harm that resulted from the uploading of the pornography. Again, there's no question that harm occurred. The question is whether the sentencing commission has established an additional guideline enhancement provision that provides for that harm. And what we're arguing here is what the commission has said is we will apply a two-level enhancement to this specific harm, and the specific harm is in the production of the pornography. If the picture produced involved a sex act, that is worse than if the picture produced did not involve a sex act. But what if the picture procures a sex act? Isn't that under this language? I mean, I thought they used to use that word procure for what they now, like, use the word pimp. Procure or whatever. So, like, I'm really having trouble seeing why this language wouldn't cover it. Well, I'm also not clear that it's been established that the production of the images was done with the express purpose of pimping them out. It was certainly the pictures were taken, and then they decided they were going to upload the images onto this website. But I don't believe the evidence shows that it was done with the express purpose of procuring a sex act when the production of the child pornography took place. Unless the Court has any further questions on the enhancement, I'll turn to the supervised release conditions. Well, first let me say there's also a challenge to the reasonableness of the sentence and whether or not the Court made a thorough enough, gave a thorough enough explanation for the sentence that it was imposing. We do know that where the defense has raised significant issues and presented significant issues in mitigation to the Court, I believe the Supreme Court in Gaul has suggested there should be something in the records indicating the Court actually considered those arguments. And yet there was extensive mitigation evidence presented which the Court simply gave no discussion of, including the abuse by his mother, the sexual abuse by the babysitter, sexual abuse by his older brother when he was a kid, the fact that he's HIV positive and is going to be externally susceptible to physical abuse in prison. All of these were argued and the Court made no reference to them in sentencing him within the guideline range. We would submit that under the law as we understand it to be, and of course we don't know what Cardin and Zavala actually are going to say, that the Court did not give a sufficient enough explanation addressing this mitigation. Now, Rita and Gaul seem to indicate that the district court, particularly for an in-guideline sentence, didn't have to say much. And there was certainly no indication in those cases that they were required to address mitigating factors or really anything in particular. And we are to give them substantial deference. So why is this different? Well, the Court didn't say the Court doesn't have to give any explanation, obviously. The Supreme Court said the sentencing court has to give sufficient enough explanation to allow an appellate court to review the sentence for reasonableness. I believe in Rita the district court only made one sentence regarding, I've considered the 3553A factors, and the Supreme Court there said that was sufficient. Well, and it may have been, in fact, sufficient based on the facts of that particular case. I'm suggesting when an extensive amount of mitigation is submitted, as it was here, and I see more mitigation evidence submitted by the defense than I see in most cases that was submitted here, if the court should make some effort to address it if the defendant is then going to argue that the sentence ultimately imposed was not reasonable based on all of those factors. Again, what comes down in Cardia and Zavala will answer the question. So I'll just leave it there, unless the Court has additional questions on that issue. Otherwise, I'll turn to the supervisory release conditions. The first test I want to address is the inpatient sex offender treatment condition. Under the condition imposed. Which condition was that, please? In the polygraph? Yeah, it's the one that includes able testing, polygraph. What the condition itself says that the court orders outpatient treatment and then says it may include inpatient treatment as determined by the probation officer. It's our position that's an improper delegation to the probation officer to determine the ultimate decision of whether the defendant must participate in inpatient treatment. And that's an improper delegation under Stevens. Clearly, inpatient treatment is a greater deprivation of liberty than outpatient treatment. It separates the defendant from his family, from society, against his will. We would submit that's an Article III judicial decision that needs to be reached expressly, that it can't simply be delegated to the probation officer to make that ultimate decision. And I cite the Court to a Third Circuit decision from 2005, the United States v. Pruden, 398 Fed 3241, which said where the condition was the defendant shall participate in a mental health treatment program as directed, or at the discretion of the probation officer, was in fact an improper delegation to the probation officer of the authority to decide whether the defendant has to participate in a particular mental health treatment program. So we would submit it's an improper delegation. With respect to the aspects of the treatment program, we express the objective to the able testing provision. In the last case, there was discussion about what the standard is. First, let me say, Weber didn't say the heightened standard applies only where a condition is highly intrusive. What Weber said was it applies if the condition involves an unusually serious infringement of liberty. Now, the cases where the Court has found an unusually serious infringement of liberty have also involved intrusiveness, but it doesn't have to involve physical intrusiveness. And we would submit that able testing, which is a completely unreliable test, we submit it's junk science, it's never been accepted by any court in which someone has tried to admit it under Daubert. Is that material? That is in the briefing, yes. Kennedy, are you suggesting we have a Daubert standard for any condition imposed? What I'm suggesting is if a scientific method, a supposed scientific method, does not meet Daubert because of its unreliability, then it would be a greater deprivation of liberty to impose that test on a defendant. Would you make the same argument for Polygraph? Well, Polygraph, of course, has satisfied the Daubert test in every court. We don't allow Polygraph cases. And if the Court doesn't allow Polygraph tests, does that mean that they have to have some heightened sort of scrutiny, like ABLE? And like the Placismograph. Yeah, I believe there does need to be some. It's an infringement of liberty. I guess I'm a little bit concerned about imposing Daubert into the sentencing realm. Has there been a case that's done that? Not to my knowledge, Your Honor. Though, obviously, Weber discusses the fact that the penile Placismograph also doesn't meet the Daubert standard. Can I ask you about one of the conditions, Condition 11, the pornography? Which conditions are you? The pornography? Accessing to any material that relates to pornography of any kind. Yeah. And I take it your argument there is that that particular one is too vague? That's correct. Under Gagliardo, the term pornography is unconstitutionally vague, at least under this Court's precedent in Gagliardo. I haven't seen this number 15 come up before about mailboxes and et cetera. I think the government's argument would be they're just cutting off another channel where a person can get pornography. What would your argument be? Well, that it doesn't meet the supervised release statute, that condition statute, that under the statute the condition must be rationally related to one of the 3553A factors, and it can involve no greater deprivation of liberty. And, of course, the government's argument is also that they say it cuts it off. It doesn't cut it off. This condition does not prevent someone from receiving mail, just prevents them from using a post office box. Someone who wants to just give their home address, they can get it just as easily. So it's not clear how this condition actually works. And, I mean, it's the same as if someone had gotten pornography through the mail, and now we're going to preclude them from ever using the Internet again. I don't think this Court would even go so far as to say that. So I don't see how this condition actually meets the statute. It's not rationally related to defense or the offender. Well, maybe they will have a response from the government. But before there was an Internet, there were the brown envelopes with no address, and maybe that has something to do with cutting off the snail approach to distribution of pornography. I don't know. Sure. But, of course, again, it doesn't stop the mail because the mail can still be delivered. It just prevents them from using a post office box. And it's not sure how that relates. Okay. Thank you. Thank you. May it please the Court. Anne Gannon on behalf of the United States in this matter. Unless the Court has any specific questions with regard to the other conditions of supervised release not addressed by defense counsel, I'll limit my comments to the issues raised. Can you also address the prohibitions on the occupational prohibitions at some point during your discussion? Yes, Your Honor. Thank you. I'd like to begin with the Rule 32 issue. The defendant in this case attempts to characterize the challenge to the pre-sentence report as a factual dispute. The government would contend that it is not a factual dispute. It was a legal challenge as to the evidentiary basis for the probation officer's inclusion of information derived from police reports in the pre-sentence report. In fact, the only time that this is in the record is on page 12, line 14 of the defendant's sentencing position, in which the defendant states that Mr. Stottero does not deny that the reports contain the information alleged in paragraphs 8 through 13 of the pre-sentence report, but exercises his Fifth Amendment right on the advice of counsel to make no further statements in denial or admission regarding the facts surrounding his offense and submits quickly that the reports contain hearsay. But he says they're not a reliable source, and so I guess you could take that as a factual challenge as well as an evidentiary issue. Yeah. I think it's properly construed as a legal evidentiary challenge, which Rule 32 in its interpretation says that the district court does not need to have an express ruling. Rule 32 only requires the district court to make a clear decision if there is, in fact, a factual dispute. What the defendant in this case is attempting to do is ask this court, without a specific factual objection, and require the government to resolve any disputed facts in the underlying case and investigation. Here the victim, 14-year-old John Doe, said that this sexual contact did occur. The defendant denied it at the time of his interview, but nowhere in the sentencing positions does he maintain that denial or state that John Doe's statement to law In this case, I think it's important to recognize that the district court did have both versions beforehand, and there was no express request to the district court to make a credibility determination between those two. And that credibility determination is what would have given rise to a true factual dispute. Otherwise, the government would be in the position of having to guess which inconsistencies in an investigation set forth in the precedent's report it would need to resolve without having those clearly delineated by the defendant as specifically contested. In addition, because this issue was properly before the district court, the district court did not err in considering it as part of the contact enhancement for a sexual event or contact. Once again, the defendant is asking this Court to narrowly construe the sentencing guidelines. And as noted by some of the questions asked earlier, the guidelines have specific definitions with regard to relevant conduct. Repeatedly in the briefs, it states the offense, the offense. However, that term offense has a specific definition under the sentencing guidelines. And that, as noted, the defense means the offense of conviction and all relevant conduct unless a different meaning is specified or is otherwise clear from the context. And that's in the notes to 1B1.1. Here, it's a single victim, a single course of conduct, and it was properly considered by the district court as relevant conduct. Both the defendant's or, I'm sorry, the victim's statements of sexual contact with the defendant and the information in the pre-sentence report concerning the victim's contact through the acts of the defendant with paying customers, both of those provide an adequate basis for the two-level enhancement that the court imposed. To do otherwise would ask the district court to excise portions of the harm caused based on some very narrow reading of guidelines. The guidelines are consistent. We want the district court to consider all the facts. And that's, in fact, statutorily, and I believe it's 3661, the district court should consider this entire universe. There's nothing improper about what the district court was looking at and its enhancement was appropriate. The Defendant Reply Brief asks the court to draw this distinction between certain offenses that group and certain offenses that do not group for purposes of guideline calculation. And in this case, that argument is a bit complicated because the statute for transportation of child pornography groups under the guidelines. The guideline for production of child pornography does not. Here, the parties stipulated to the cross-reference to the production guideline. To restrict the district court's consideration of these facts based on that kind of difference where the offense of conviction and the proper guideline is different would result in an incomplete consideration of the harm caused. And as this court has noted in the Reese decision, that is the goal of sentencing. In addition, this court is correct that acts that were procured or resulted from the offense and relevant conduct should be considered. In paragraph 10 of the pre-sentence report, it indicates that the defendant first showed the victim. The website went boy.com, and then that day the pictures were taken. And the government would submit that there's enough of a causal relationship between the demonstration of the website, discussions leading up to the agreement to post these pictures, and to essentially pimp out the victim on the website, are sufficiently related to the ultimate sexual contact, both by the defendant and by the paying customers. With regard to the reasonableness of the 151-month low-end guideline sentence, the government submits that not only is the sentence reasonable, but the district court properly considered the 3553A factors and all of the mitigation factors set forth by the defendant. The defendant asked the court to find that because the district court imposed a guideline sentence, that that somehow means that it did not properly consider the mitigating factors. And that is not supported by the record. First of all, the district court complemented defense counsel on two occasions on the extensive briefing in defense counsel's argument. That indicates that the district court did read and consider those arguments in ultimately arriving at the sentence. In addition, because of the numerous aggravating factors in this case, the fact that the sentence was not higher, in fact, reflects that there was consideration of mitigating factors. Specifically, as noted in the briefs, this defendant approached the victim when he was particularly vulnerable, had a gay support group. He facilitated the production of the child pornography. He posted the images on the rentboy.com website. He facilitated the sex acts with the paying customers. He, in fact, gave the 14-year-old victim alcohol to give him courage for those events. And he proceeded to take a portion of the fee paid. All of those go beyond production of child pornography in terms of aggravating circumstances. And the fact that the district court ultimately ended up at a 151-month low-end sentence is circumstantial evidence that it considered appropriately the mitigating factors. Once again, the district court does not need to be formalistic in its approach with regard to these factors. And just because the defendant believes a sentence other than what was imposed could be reasonable does not make the sentence imposed unreasonable. And the Court noted that in Muhammad. With regard to the conditions of supervised release, Your Honor, I apologize if I'm incorrect on this. I don't believe that the improper delegation argument with regard to inpatient treatment was raised in the briefs. It was raised before the district court. And if the court is inclined to consider that argument, the government would ask for an opportunity to have a supplemental briefing on that issue. With regard to ABLE testing, the Court's heard argument on that previously today. I do think that the conditions that were subject to the heightened standards and Weber and Williams are significantly different than ABLE testing. The record before this Court with regard to ABLE testing is what is set forth in the Weber decision in terms of a description. And that is the observation of the defendant while the defendant is viewing pictures. There is no physical intrusion in this type of test. And I think that physical intrusion is the key to whether the heightened standard is necessary. The fact that there is no physical intrusiveness, I think it would also be inappropriate for this Court to apply the Daubert standard to this type of condition. There's no connection between whether a – I shouldn't say there's no connection, but I think there's a limited connection, if any, between the admissibility of a certain type of evidence before a trial court and whether that type of treatment can be beneficial to a defendant while in a treatment program. This type of test may facilitate discussion. It may help the treatment provider focus the types of images or preferences the sex offender may have. And while none of that may be relevant or admissible under Daubert before a trial court, I think it would be detrimental ultimately to these defendants to restrict the ability of their treatment providers to use certain tests absent some type of deprivation of liberty, which the government contends is probably construed as a physical intrusion. With regard to the pornography, the government agrees that that should go back to the district court because it is vague, and I think it was not intended by the district court to be imposed. And so I believe that issue is resolved. With regard to the commercial receiving or mail receiving agency or post office I think the Court's question about whether it's additional channel in terms of a defendant's ability to acquire this type of material, child pornography, other means of communicating with a potential victim, is the heart of what makes this condition appropriate. In this case, are there restrictions placed on the defendant receiving pornography through the Internet? Yes, Your Honor. There's a restriction on child pornography only. So this, I take it this mailbox restriction under Condition 15 is to close another possible channel? Yes, Your Honor. And it differs from regular mail delivery to a residence in that a defendant could open this type of account without the knowledge of their probation officer. A probation officer is always going to assume that a defendant receives mail at their place of residence and can take steps to monitor that mail through mail covers arranged with the Postal Service and take other measures if they know about it. What's concerning about this type of condition is that it could be unknown to the probation officer. And it's not an absolute prohibition. If the defendant had a legitimate reason for having a P.O. box or some type of mailboxes, et cetera, type mailbox in connection with their business and the probation officer was aware of it, the condition says upon approval of the probation officer. So if they are forthcoming with their probation officer explaining why they need it, there really seems to be no issue about whether they could obtain one if necessary and they had a legitimate purpose. I think the concern is that there would be no legitimate purpose and they could use it to obtain child pornography or, based on the record in this case, correspond with minor victims. With regard to the occupational restrictions, this Court addressed the issue of occupational restrictions kind of tangentially in Rearden. The condition was that the defendant could not have contact or have access to computers and then basically from that was the issue of whether that was an improper occupational restriction. And the Court found that it was not. I think the distinction that should be drawn is conditions in which the Court says you can no longer be a stockbroker or, in the cases cited by the defendant, you can no longer be a long-haul truck driver. And that is what that person traditionally has done and has supported themselves and or their families, that there is a concern that there should be heightened standards and a limited duration on that type of restriction. Let me ask you this. The guidelines are somewhat ambiguous about whether it's referring to the occupation that the defendant previously had or not. It really doesn't clarify that. Are there any cases that you're aware of that have clarified whether that guideline refers only to occupations that the defendant previously had? No, Your Honor. Other than a comment in Rearden, I believe, that indicated that because the defendant was not previously employed in a computer-type industry, they weren't going to find that that was improper until that issue basically arose. It's almost a whiteness issue. I think we said in Rearden that he can go back to his prior work without any violation. Yes, Your Honor. I believe that that is correct. And I think that's also the situation here. The defendant is a very young man. What's his prior occupation here? Your Honor, he was, I believe, a singer with a touring musical group up with people, and he also had a job in customer service. So nothing in terms of trade or skills that would be specific enough that he would be deprived of an exceptional opportunity to support himself and meet his financial obligations. And so absent that, the government would contend that the restrictions were appropriate, particularly because this is a case where there was a contact victim. It's even above and beyond a so-called simple possession of child pornography case. This defendant, the record indicates, targeted a victim who was vulnerable, exploited that victim for financial gain. And having this defendant upon release have access to minors in the course of his employment does not meet the goals of sentencing. So unless the Court has any additional questions, I'd submit all the briefs. Thank you. Okay. This case is submitted. Your Honor, I just the government counsel suggested that the improper delegation argument had not been raised in the appellant's opening brief. It was on page 30 of the appellant's opening brief. We argue the condition that Mr. Spadaro undergo inpatient treatment as directed by the probation officer constituted an unconstitutional delegation of the Court's authority and an undue infringement of Mr. Spadaro's liberty interest, which should not be left to the discretion of a probation officer. So we did in fact... Is that the only mention of it? It is. That phrase? It is. Thank you. Okay. This case is submitted and we are adjourned.
judges: Wallace, Gould, Ikuta